***********
The Full Commission has reviewed the Deputy Commissioner's Opinion and Award based on the record of the proceedings before the Deputy Commissioner and the briefs and oral arguments before the Full Commission. The appealing party has not shown good grounds to reconsider the evidence, and having reviewed the competent evidence of record, the Full Commission hereby AFFIRMS the Opinion and Award of the Deputy Commissioner with some modifications.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as:
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. An employer/employee relationship existed between defendant-employer and plaintiff-employee.
3. The carrier on the risk is North Carolina Farm Bureau Insurance Company.
4. Plaintiff's average weekly wage is $403.60, which yields a compensation rate of $269.08.
5. Plaintiff sustained an injury by accident on or about August 16, 2000.
6. The injury arose out of and in the course of employment and was accepted as compensable on a Form 60 dated September 7, 2000.
7. The parties agreed to a 17.5% permanent partial disability rating to plaintiff's left hand.
8. The following were entered into the evidence of record at the hearing before Deputy Commissioner Rowell:
a. Stipulated Exhibit #1 — packet containing pre-trial agreement as properly modified and initialed by the parties
b. Stipulated Exhibit #2 — I.C. Forms
c. Stipulated Exhibit #3 — indemnity workers' compensation payments to claimant
d. Defendants' Exhibit #1 — private investigator's report
9. The issues to be determined by the Commission are what amount of a credit, if any, is due defendants; is plaintiff due any temporary partial disability benefits from August 23, 2001 until the present; did plaintiff return to work for a different employer at the same or greater wages; did plaintiff earn wages while receiving workers' compensation; did plaintiff violate Workers' Compensation Rules 901, 902, 903.
 ***********
Based upon all the competent evidence in the record, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before Deputy Commissioner Rowell, plaintiff was 39 years old with a twelfth grade education.
2. On August 16, 2000, plaintiff worked for defendants as a framing carpenter and fell through the rafters, suffering a fracture to the distal edge of the left clavicle and distal radius of his wrist.
3. Plaintiff's claim was accepted on a Form 60 filed September 7, 2000. Plaintiff had an average weekly wage of $403.60 with a corresponding compensation rate of $269.08.
4. Plaintiff received all necessary and appropriate medical treatment which has been provided by defendants.
5. Plaintiff's primary treating physician, Dr. Gary Avioli, assigned plaintiff a 5% permanent partial disability rating to his left hand on April 2, 2001. Dr. Warren Burrows assigned plaintiff a 15% permanent partial disability rating to his left hand on October 11, 2001. Plaintiff saw Dr. Russell T. Garland for an independent medical evaluation on February 11, 2002 and was given a 20% permanent partial disability rating to the hand. The parties agreed that the disability rating is 17.5%, which entitles plaintiff to 35 weeks of compensation for a total of $9,417.80.
6. Plaintiff was paid temporary total disability compensation at the rate of $269.08 from August 31, 2000 until September 13, 2001. After complying with North Carolina Industrial Commission Workers' Compensation Rule 902, and sending plaintiff appropriate notice, defendants began to include Rule 901 language. Accordingly, each check beginning on September 7, 2000 was emblazoned with the following language directly below the endorsement line:
 By endorsing this check, I certify that I have not worked for or earned wages from any business or individual during the period covered by this check, or that I have reported any earnings to the employer/carrier paying me workers' compensation benefits. I understand that making a false statement by endorsing this benefit check may result in civil or criminal penalties.
7. Plaintiff endorsed every check from September 7, 2000 through September 13, 2001 which included the above fraud language of Rule 901. Plaintiff had actual and constructive knowledge of the fraud language in that by endorsing the check, he certified that he had not worked or earned wages from any business or individual during the period or periods covered by the check.
8. In August of 2000, plaintiff contracted with David Woodruff of Woodruff's Wallpaper Painting, Inc., to perform work as an independent contractor. Plaintiff received his first check from Mr. Woodruff on August 28, 2000 for $300.00. Plaintiff received a second check from Mr. Woodruff on August 31, 2000 for $240.00, and a third check on September 14, 2000 for $1,200.00. Plaintiff was paid a total of $1,740.00 for the work he performed in August and September of 2000. Of that money, $1,200.00 was received by plaintiff after endorsing a workers' compensation check that included the fraud language pursuant to Rule 901.
9. Plaintiff also performed work for Mr. Woodruff in February and March of 2001. For that carpentry work, plaintiff received a total of $2,550.00. Plaintiff received two checks from Mr. Woodruff. The first check was received on February 19, 2001 for $2,000.00 and a second check was dated March 22, 2001 for $550.00.
10. At all relevant times that plaintiff received checks from Mr. Woodruff for work performed, plaintiff also received temporary total disability benefits from defendants. Each and every check contained the fraud language of Rule 901.
11. In July of 2001, defendants sent plaintiff a North Carolina Industrial Commission Form 90 for the period of time of August 16, 2000 through July 9, 2001. Plaintiff responded on July 24, 2001 indicating that he worked for David Woodruff and attached a chart indicating dates worked and the amounts received. The chart plaintiff submitted is as follows:
 Dates worked: Materials: Labor: Amount received: My gross pay:
 8/28/00 $75.00 $100.00 $300.00 $125.00
 8/31/00 $40.00 $100.00 $240.00 $100.00
 9/14/00 $130.00 $650.00 $1200.00 $420.00
 2/19/01 $369.00 $350.00 $2000.00 $883.00
 3/22/01 $65.00 $883.00 $550.00 -0-

11. Following the receipt of the Form 90, completed by the plaintiff, defendants began on August 9, 2001, to reduce plaintiff's temporary total disability payments in half or to the aggregate amount of $134.54. This deduction of plaintiff's temporary total disability payments was begun by defendants without the approval of the Industrial Commission.
12. Plaintiff returned to work on September 6, 2001 for another employer. Based upon the evidence presented, plaintiff is not claiming any additional temporary total or temporary partial compensation benefits after September 6, 2001.
13. Defendants continued to pay plaintiff at the reduced rate of $134.50 through September 13, 2001.
14. After giving due consideration to plaintiff's testimony and the competent and credible evidence in its entirety, greater weight is given to the record evidence which does not support or corroborate plaintiff's allegations that he was unaware that his receipt, endorsement, and deposit of his workers' compensation checks, while receiving other wages, constituted a false statement for the purpose of obtaining workers' compensation benefits.
15. Following the hearing before the Full Commission, the parties stipulated to a credit of $1,200.00 for material and labor costs plaintiff paid two workers who helped perform the work for Mr. Woodruff. Plaintiff received $4,290.00 in wages for the work performed less the $1,200.00, for a gross of $3,090.00. Defendants are entitled to a deduction of $3,090.00 from indemnity benefits paid to plaintiff.
 ***********
Based upon the following stipulations and findings of fact the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Plaintiff is entitled to a permanent partial disability rating of 17.5% to his left hand, which equates to $9,417.80. N.C. Gen. Stat. § 97-31(12).
2. Based upon the greater weight of the evidence, defendants are entitled to an offset or deduction of that amount to be determined as follows: Defendants are entitled to an aggregate credit in the amount of $3,090.00 for the amount of money plaintiff earned while working for Mr. Woodruff. Defendants are entitled to an additional credit of $134.54 for the check plaintiff received after he began work for Allied Security on September 6, 2001. Accordingly, defendants have an aggregate credit in the amount of $3,224.54. Of that amount, defendants had already unilaterally reduced the plaintiff's temporary total disability payments in half without the Commission's approval from August 9, 2001 through September 6, 2001, and as a result had received or withheld from plaintiff the sum of $672.70. Accordingly, defendants must pay a late payment penalty of 10% of the aggregate amount, or $67.27. Subtracting $672.70 and $67.27 from $3,224.54 entitles defendants to a credit of $ 2,484.57. Plaintiff is entitled to receive $9,417.80, which after offset or deduction, results in a total amount of $6,933.23 for payment of his permanent partial disability rating. ($3,090.00 + $134.54 — $672.70 — $67.27=$2,484.57. $9,417.80 — $2,484.57 = $6,933.23). Workers' Compensation Rule 901, 902.
3. Plaintiff, by his actions and deeds, was in direct violation of N.C. Gen. Stat. § 97-88.2, and this matter shall be referred to the North Carolina Industrial Commission Fraud Unit for additional investigation and possible prosecution.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendants shall pay plaintiff the amount of $ 6,933.23 for payment of his permanent partial disability rating. This amount has accrued and shall be paid in a lump sum.
2. A reasonable attorney fee in the amount of 25% of the compensation awarded plaintiff is approved for plaintiff's attorney and shall be paid directly to plaintiff's attorney.
3. The cost of the deposition for David Leonard Woodruff shall be taxed to plaintiff.
4. This matter shall be referred to the North Carolina Industrial Commission Fraud Unit for investigation and possible prosecution pursuant to N.C. Gen. Stat. § 97-88.2.
5. The costs of this action shall be paid by defendants.
This the 30th day of August 2004.
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
 S/_______________ DIANNE C. SELLERS COMMISSIONER
LKM/mlb